## Charles Ray v. The State.

No. 7973.   Delivered April 30, 1924.

Rehearing denied November 12, 1924.

1.—Burglary—Evidence—Impeaching—Rebuttal.

Appellant complains of the admission over his objections of the testimony of sheriff Hudler that on the morning after the alleged burglary a witness, Baker, told the sheriff that appellant and another man, on the night before had offered to sell him the automobile casings in question. Primarily, as direct evidence, such testimony would not be admissible.  As it was offered it was admissible.  Baker, introduced by the state was attacked, on cross-examination by the appellant, who sought to show that he had made statements contradictory to those which he testified to on the trial.  In rebuttal of this, the state was permitted to show that he had made the same statement to the sheriff, the morning after the burglary that he made on the trial. See sec. 81, Branch's Ann. P. C.

2.—Same—Evidence—Impeachment of Witness—Contradictory Statements.

While it is always permissible to impeach a witness by showing that he had made contradictory statements to his testimony given on the trial, it is not proper for counsel for appellant to hand witness a transcript of his testimony at the examining trial, and ask him to read, and see if he had said on the examining trial that appellant offered to sell him the casings in question.

3.—Same—Evidence—Impeaching Appellant—Other Offenses—Cross-Examination.

Appellant admitted in response to a question by the state that he had been charged with the theft of oranges.  Appellant's counsel, then asked appellant on his redirect examination, if he took the oranges in the spirit of stealing them or in what spirit he took them.  Objection made to this question by the state was sustained.  In the light of the statement of facts no error is here presented, for it appears therefrom that appellant not only testified in explanation, as the bill recites that he would, but that he went much further into detail than the bill recites.

4.—Same—Jury—Misconduct of—Action of Trial Court.

Appellant, as one ground for new trial, alleged that L. D. Duran, one of the jurors, was unfair and prejudiced, and had before the trial expressed the opinion that appelant should be sent to the penitentiary.  This allegation was controverted, and evidence heard on the issue.  The decision of the trial court will be sustained on such issue, by the Appellate Court, unless clearly wrong.  See Branch Ann. P. C. 288 for collation of authorities.

5.—Same—New Trial—Motion for—Impeaching Evidence.

A motion for a new trial should not be granted on the grounds of newly discovered evidence, solely of an impeaching character.  However, the newly discovered evidence of the witness Vernon Douglass, in this case, did not measure up to even impeaching character.

Appeal from the District Court of Jackson County.  Tried below before the Hon. John M. Green, Judge.

Appeal from a conviction for burglary; penalty, two years in the penitentiary.

*Fly & Ragsdale,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for burglary, punishment being two years' confinement in the penitentiary.

The premises alleged to have been burglarized was a garage belonging to one Vick, and usually referred to as "Vick's Garage." It is unnecessary to set out the evidence further than to state that the burglary was discovered early in the morning after it occurred. It was ascertained that some twenty automobile casings had been taken. These casings were afterwards discovered about five hundred yards from the road leading from Edna to Victoria and some four or five miles from the latter place. The exact number of casings was recovered that was lost from the burglarized house. Some of them were so marked that they could be, and were positively identified as casings which had been in the garage prior to the burglary. H. C. Baker had formerly lived in Edna but at the time of the burglary was living in Victoria. He testified that some ten days prior to the burglary appellant and Sam Arceneaux had talked to him in Victoria relative to selling him some automobile casings; that on the night of the burglary about two o'clock they came to his house and told him they had the casings and had left them at a certain place; that they admitted they had stolen them from the "Vick Garage;" that he then declined to purchase or have anything further to do with the casings. We do not discuss the testimony further in detail but find it sufficient to sustain the conviction.

It appears from bills of exception two and six that appellant objected to the State proving by sheriff Hudler that on the morning after the alleged burglary Baker told the sheriff in his office that appellant and Arceneaux the night before had offered to sell him the automobile casings in question. It is impossible to appreciate the manner in which this question got before the court without understanding how the evidence was developed. Baker testified on direct examination that appellant and Arceneaux offered to sell him the alleged stolen casings late in the night on which the burglary occurred, and admitted to him at that time that they had stolen them from the burglarized garage. He further testified without objection being interposed that the next morning in response to an inquiry he told the sheriff over the telephone about having seen the parties the night before; that the sheriff then told witness about the burglary and about the finding of the casings; that later witness went to the sheriff's office and there saw the casings in question. On cross-examination appellant himself

developed in detail not only the telephone conversation with the sheriff but also the subsequent conversation in the sheriff's office.    Upon this cross-examination witness said:

"I think I told him over the phone that they had come and offered me the casings, and then I went over and talked to him about it.  When Mr. Hudler was trying to find out who had stolen this stuff I told him that Sam Arceneaux and the defendant had told me they had stolen this stuff out of Vick's garage.   I am not sure that I told him that over the phone but when I went over there I did."

In response to a question from appellant the sheriff had testified that Baker did not tell him over the telephone that appellant and Arceneaux had offered to sell witness the casings, but in reply to a question from the State did say that Baker had made such statement to him in his office; to this appellant objected, asserting that the State had gone further than the predicate for impeachment laid by appellant would permit and was getting hearsay testimony before the jury.   In view of the complete development by appellant himself from the witness Baker of the details of the conversation between him and the sheriff both over the phone and in person the complaint made appears to be groundless.   In the peculiar manner in which the question arose the testimony was admissible in any event under the rule permitting a witness to be sustained by proof of similar statements where he is sought to be impeached by showing statements in conflict with his evidence on the trial.   (For authorities, see Section 181, Branch's Ann. Pen. Code.)

Baker had testified that appellant and Arceneaux had proposed to sell him casings several days prior to the night of the burglary.

The witness admitted that he had testified on the examining trial and that his evidence had been reduced to writing.   He was then requested by appellant to take the examining trial testimony and find in it, if he could, where witness had testified that appellant had offered to sell him casings prior to the night of the alleged burglary.   The State objected to this method of procedure and was sustained by the court. The bill complaining of this does not show that Baker had been asked by appellant if it was not a fact that in his examining trial testimony he failed to connect appellant with the prior offer to sell automobile casings, but he was simply asked to take the examining trial testimony and ascertain from an examination thereof whether he could find such statement therein.   The bill fails to show a proper predicate relative to the matter.   If the testimony of this witness upon the examining trial was silent upon the matter it was available to appellant and by laying a proper predicate the absence of such testimony from the statement could have been shown.   The bill failing to show a proper predicate the ruling of the court presents no error.

Appellant admitted in response to a question from the State that he had been charged with the theft of oranges from an orchard and had

entered a plea of guilty thereto. His counsel then asked if he "went to the orchard and took the oranges in the spirit of stealing them, and if not, in what spirit did he go there?" Counsel for the State interposed objection to the form of the question, saying that witness could describe the surroundings and facts of the transaction and let the jury pass upon the spirit in which it occurred. The objection was sustained. The bill recites that if appellant had been permitted he would have explained that he "went to the orchard to get some oranges to eat and did not go there with the idea of stealing anything for profit; that they just went over there in a spirit of mischief." We are unable to understand this bill in the light of the statement of facts. It appears therefrom that appellant not only testified in explanation as the bill recites that he would, but that he in fact went much further into detail in his explanation than the bill relates. He testified that some thirteen or fourteen boys were in the crowd; that they went into the orchard to get the oranges to eat and not for profit; he named a number of the boys who were with him, and said they were all school boys about appellant's own age; that they got no money for the oranges nor did they sell or try to sell them; that they brought them up in town and ate them in the court house yard. In view of the evidence which appellant did give we see no error in the court declining to permit him to answer the exact question set out in the bill.

As one ground for new trial it was alleged that L. D. Duran, one of the jurors, was unfair and prejudiced, and had before the trial expressed the opinion that appellant should be sent to the penitentiary. This allegation was controverted and evidence heard upon the issue. Mrs. Garringer testified in substance that a short time before the trial she had taken dinner at the house of the juror Duran; that she expressed sympathy for the family of appellant, whereupon Duran remarked that "appellant ought to be sent to the penitentiary for a short time to teach him a good lesson while he was still young." The witness asserted that at the time this conversation occurred Mrs. Montag was present. The latter witness testified that no such conversation occurred in her presence and that she did not hear the case of appellant referred to during the time she was at Duran's house. The juror Duran himself specifically denied any such conversation as that claimed to have been heard by Mrs. Garringer, and said if any reference was made to appellant's case at all he had no recollection of it. The court having heard the evidence settled the controversy in favor of the State. We cite the authorities collated by Mr. Branch on page 288 of his Ann. P. C. under the following statement:

"When it is sought to show on the hearing of the motion for new trial that a juror before the trial had expressed an opinion of defendant's guilt or had made statements which showed a prejudice against defendant, the decision of the trial court on that issue will be sustained

by the Appellate Court unless clearly wrong if the evidence bearing thereon was conflicting and was sufficient, if believed, to justify the action of the trial judge."

Upon the trial appellant testified that he was not in the town of Edna on the night of the burglary, asserting that he left there early in the evening on a fishing trip. Weaver, the night watchman, testified that between eleven and twelve o'clock on the night in question he recognized appellant as he drove down the street in a Ford touring car; that witness flashed his light upon the car as it passed and in that way recognized appellant as the driver. In his motion for new trial appellant sets up newly discovered evidence in that it is averred that Vernon Douglas was with Weaver at the time he claims to have recognized appellant, and that Weaver did not flash his light upon the car in question. The affidavit of Douglas is attached to the motion and he was also called to testify in person on the hearing thereof. He claims to have been with the night watchman and asserts that some time during the night a car passed and that Weaver asked him (Douglas) if he knew who was in the car and upon witness replying that he did not Weaver said that he (Weaver) did know who it was, but did not give any name. He denies that Weaver threw his flashlight on that particular car, but admits that he did flash his light on a number of cars which passed that night. There is nothing either in the affidavit of Douglas or in his testimony given upon the hearing that questions the correctness of the statement of Weaver that he recognized appellant upon the night in question by the light flashed upon the car. If it be conceded that no light was flashed on the particular car about which the conversation occurred, if it did, there is nothing to show that this was the car Weaver claimed appellant to have been in. Douglas says he flashed the light on several. We do not feel called upon to reverse because of alleged newly discovered evidence of this character.

Bills of exception one, four and five are not briefed for appellant. We have examined them and they present nothing calling for review.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

LATTIMORE, JUDGE.—Appellant complains of our disposition of the error urged in his bills of exception Nos. 2 and 6. The matter is discussed at length in the original opinion to which reference is made for a setting out of the facts. As we understand the law, a witness who does not remember or is not sure he made a given statement, may be impeached by the opposite party by proof that he did make same.

If a witness affirms that he made a statement at one of two times or places,.but is not sure which, and the opposite party proves that he did not make such statement at one of the times or places mentioned, the party introducing such witness may then prove that he made same at the other time or place named. The proposition stated carries with it the conclusion that the witness Baker having testified that he told the sheriff of Jackson County certain things material to this case, either over the phone or at his office,—and the. defense having shown by the sheriff that Baker did not so state over the phone, the State might then prove by the sheriff that Baker did make such statement to him at his office. In addition to the rule referred to in the original opinion, attention is called to the authorities cited under Section 92 of Branch's Annotated P. C. We are unable to perceive the application of Pool v. State, 48 Texas Crim. Rep. 480.

We know of no rule of law under which a witness who had testified at some former time and whose testimony had been reduced to writing, could be compelled by appellant during his examination, to take such written statement and search through same to see if he could find therein a certain matter. The witness could say that he did or did not make any statement inquired about, and proof to the contrary, if evidenced by the writing, could be made by the introduction of same.

We doubt the advisability of a court ever stopping a trial to investigate the question as to whether a juror on the panel be so prejudiced as to render him not a fair juror. Certainly such investigation would greatly disturb the orderly procedure which should characterize trials. The accused could be given every opportunity to present such contention in in his motion for new trial, and his rights would be secured as fully by the granting of a new trial upon such showing, as he would obtain by the declaration of a mistrial before verdict.

Finding ourselves unable to agree with the contentions made by appellant in his motion for rehearing, same will be overruled.

*Overruled.*